ABELT, Plaintiff, v. ZEMAN, a. k. a. ABELT, Defendant.
ABELT, Plaintiff, v. ABELT, Defendant.

Common Pleas Court, Cuyahoga County.

Nos. 734584 and 734631.

*Mr. William J. Shields*, for the wife.

*Mr. William R. Brofman* and *Mr. Charles L. Livingstone*, for the husband.

JACKSON, J.   These two cases arise out of the same transaction.   In both cases, the Court has before it motions to advance; and in addition in Case No. 734,631, there is a motion to consolidate filed on behalf of the plaintiff.   In that same case, there is a motion to strike the petition from the files filed by the defendant.   The Court is going to use this memorandum as a means of ruling on all the motions pending in these two cases.

In Case No. 734,584, the husband filed an action for annulment against the wife. In his petition he alleges that during his minority he and the defendant entered into a "pretended" marriage in Pennsylvania. He further alleges that he was under duress, threat of arrest and that he was already married at the time and that the defendant knew he was married. He further alleges that the marriage was never consummated and that the plaintiff and the defendant have not cohabited. He prays for an annulment.

To this petition, a demurrer was filed. The demurrer was filed on four grounds; namely, 1) that the petition did not state facts which show a cause of action against the defendant; 2) that this Court did not have jurisdiction of the subject matter of the action; 3) that the Court did not have jurisdiction of the person of the defendant and 4) that there is a second action pending between the same parties for the same cause. Another Judge of this Court overruled this demurrer. This is, no doubt, because in his petition the plaintiff alleges that he was under duress at the time the marriage was being contracted.

In Case No. 734,631, the wife sues the husband for divorce, alimony, support and other equitable relief. The wife alleges gross neglect of duty and that the defendant had a wife living at the time of the marriage. To this petition the defendant files a motion to strike. The defendant in filing his motion to strike has assumed that the reason the demurrer in Case No. 734,584 was overruled was because of the allegation that the plaintiff husband alleged in that case that he was under the disability to contract the marriage by reason of being already married and that this is a ground for annulment and not one for divorce.

Ohio and a number of other states allow a plural or bigamous marriage to be used as a ground for divorce:

1. Section 3105.01, Revised Code:

"(A) Either party had a husband or wife living at the time of the marriage from which the divorce is sought."

2. Arkansas. Code No. 34-1202:

"(3) Where he or she had a former wife or husband living at the time of the marriage sought to be set aside."

3. Colorado. Code No. 461-1:

"(2) That the spouse from whom a divorce is sought had a husband or wife living, and not divorced at the time of the marriage."

4. Florida Statutes No. 65.04:

"(9) That either party had a husband or wife living at the time of the marriage sought to be annulled."

5. Illinois Statute No. 40:

"(1) * * * or, that he or she had a wife or husband living at the time of such marriage."

6. Kansas Statutes No. 60-1501:

"(1) When either of the parties had a former husband or wife living at the time of the subsequent marriage."

The above states are the only ones the Court could find who have by statute determined that a divorce may be granted from a marriage which was void *ab initio* and upon grounds which are generally held to be proper for the annulment of a marriage contract.

Illinois has by statute also given the right to the Court under this ground to grant alimony or to make a division of property as the Court may find equitable under the circumstances.

An action or proceedings for annulment differ from those for divorce in that no rights accrue to the parties in an annulment proceeding, although some jurisdictions have permitted a division of property. Annulment may be brought upon two theories: First the marriage is voidable and second, that it is void *ab initio* and that no valid marriage ever existed.

In many states the same grounds may be used as a basis for an annulment or as a ground for divorce, see Marriage and Divorce, identical grounds for annulment and divorce in Kansas, 15 Journal of the Bar Association of Kansas, 96 (1946-47).

In addition to annulment and divorce, it is possible that since the plural or bigamous marriage is void *ab initio* that the party may select one of three choices: First, without waiting for a dissolution either by death or divorce or decree of nullity, the mate may simply separate from the other, and if desired the innocent one may enter into a legal marriage with a third person, see 26 Ohio Jurisprudence, 67, Marriage, No. 55, 18 R. C. L., 44, Sec. 69 and at page 445, Sec. 75. Second, the mates may obtain an annulment or decree of nullity, see *Fuller* v. *Fuller*,

114

33 Kansas, 582 (1885); *Werner* v. *Werner*, 59 Kansas, 399 (1898); *Smith* v. *Smith*, 72 Ohio App., 203 (1943) and *Nyhuis* v. *Pierce*, 650 L. A., 73 (1952). Third, in those few states where it is a ground, petition the court for divorce, see *Vanvalley* v. *Vanvalley*, 19 Ohio St., 588 (1869); *Whitney* v. *Whitney*, 192 Okl., 174, 134 P. 2d, 357 (1942); *Basile* v. *Basile*, 86 Ohio App., 535 (1948); *Eggleston* v. *Eggleston*, 150 Ohio St., 422 (1952) and *Kontner* v. *Kontner*, 74 Ohio Law Abs., 97 (1956).

Although there is a choice of merely leaving the mate or ''going to court'' inasmuch as the bigamous or plural marriages are void *ab initio* and although there seems to be a present tendency to ignore these void marriages, in the interests of society and peace of mind of the parties a judgment of the court restoring the parties to their original rights or a judicial declaration that the marriage is void, seems advisable, see 15 Journal of the Oklahoma Bar Association, 855. This same thinking is followed in Ohio and was best stated in the case of *Waymire, etc.* v. *Jetmore and Spencer*, 22 Ohio St., 271 (1872), where at page 274 the Court said:

''Social order and public decency demand that the parties to a meretricious relation, in which the forms of marriage apparently legal, seem to bind them, should be judicially relieved therefrom. *This alone is sufficient cause for the interference of whatever tribunal possesses the adequate powers.* But the succession of property and the legitimacy of inheritance which the law regards with peculiar jealousy furnish a no less controlling motive for such interference.'' (Emphasis added.)

The ''spouses'' may have arrived at a state of plural or bigamous marriage in three ways:

*BY A SERIES OF TWO OR MORE CEREMONIAL MAR-RIAGES BETWEEN THREE OR MORE INDIVIDUALS.*

There is no doubt under Ohio law that where the plurality of marriages is arrived at by reason of a series of ceremonial marriages, a divorce may be granted; and under the decree of divorce, the Court has jurisdiction to grant alimony ''and other relief authorized by the statutes on divorce and alimony.'' See *Eggleston* v. *Eggleston, supra* and *Vanvalley* v. *Vanvalley, supra.*

It is assumed that ''and other relief authorized by the

statutes on divorce and alimony'' would and could refer to Section 3105.21, Revised Code, which reads:

''Upon satisfactory proof of any of the charges in the petition for divorce or for alimony, the court of common pleas shall make such order for the disposition, care, and maintenance of the children of the marriage, as is just, and in accordance with Section 3109.04, Revised Code.''

The logical result should be that the Court should, therefore, determine the custody of minor children born of this void marriage.

It further appears that these children of the void marriage are not to be considered illegitimate as Section 3105.13, Revised Code, states:

''The granting of a divorce and the dissolution of the marriage shall not affect the legitimacy of children of the parties.''

In addition to the statute above, Section 2105.18, Revised Code, in part says:

''The issue of parents whose marriage is null at law shall nevertheless be legitimate.''

Therefore, children born of both void and voidable marriages should be considered legitimate. Section 2105.18, Revised Code, has been said by some to be applicable only to voidable marriages and not to marriages which are void *ab initio*. But in the case of *Wright* v. *Lore*, 12 Ohio St., 619 (1861), the Court held that children of a bigamous marriage are legitimate. The Supreme Court of Ohio held:

''We the asked to construe the expression 'deemed null at law,' as applicable only to marriages which are voidable, and require a judicial sentence to establish their nullity. We do not feel authorized to so limit the language of the statute.''

The Court in the *Wright case, supra*, therefore, held that the children of an admittedly bigamous marriage were legitimate and entitled to all the rights of inheritance. This thinking has been followed in later cases, see *Garner* v. *Goodrich Co.*, 136 Ohio St., 397 (1940).

Thus, as previously stated, a divorce granted under Section 3105.01(A), Revised Code, is proper relief from a ceremonial marriage entered into when either party had a husband or wife living at the time the marriage was performed.

There is no doubt that the relationship is bigamous under Section 2905.03, Revised Code.

*BY A SERIES OF MARRIAGES BEING FIRST A COMMON LAW MARRIAGE AND LATER ONE OF THE PARTICIPANTS OF THAT MARRIAGE TAKING ANOTHER MATE BY A CEREMONY OF MARRIAGE.*

This is the type of relationship which is also recognized as being grounds for divorce or for annulment. See *Nyhuis* v. *Pierce*, 65 Ohio Law Abs., 73.

In jurisdictions recognizing common law marriage, the crime of bigamy may be based on a prior common law marriage. See 7 Am. Jur. 754, Bigamy, Section 11.

The second marriage thereby guised with license and ceremony while the first was not is void; and the status of the marriage, whether common law or ceremonial, continues during the joint lives of the parties or until divorce. Thus, it appears that where the common law marriage between husband and wife has continued without interruption over a period of 12 years and without dissolution, the wife's subsequent ceremonial marriage with another is void. See *In re Zemmick*, 32 Ohio Opinions, 504, 49 Ohio Law Abs., 353.

*BY HAVING ENTERED INTO A CEREMONIAL MARRIAGE AND LATER ONE OF THE SPOUSES MARRYING ANOTHER PERSON BY COMMON LAW.*

This factual series seems to present the greatest doubt as to the relationship of the parties.

The Ohio Supreme Court has held in *Carmichael* v. *The State*, 12 Ohio St., 553 (1861), that when the husband marries the wife by ceremony and later marries another at a ceremony where the person who solemnized the marriage had no license or authority under the laws of the state, the second marriage constituted a legal marriage; and the husband having then a wife living, on proof of such second marriage, he could be properly convicted of bigamy.

The *Carmichael case* is the leading case in Ohio on what elements constitute a common law marriage. It has been followed and cited as a leading case for the theory that marriage statutes are not restrictive and prohibitory and that common law marriage can be recognized as a valid marriage. See 5

O. S. C. J., 28, 37, 183 and 197. The editors of 7 Ohio Juris-prudence 2d, 504, Bigamy No. 5 also set out the theory:

"That a subsequent common-law marriage constitutes a bigamous marriage,"

as does 7 Am. Jur., 755, Bigamy No. 13.

As early as 1899, the Supreme Court of Michigan in *People* v. *Mendenhall*, 119 Mich., 404 (1899), 78 N. W., 325, held:

"Where a married person contracts a common-law marriage lacking the formalities prescribed by statute for the solemniza-tion of marriage, it is bigamy."

There the second marriage was made by written contract.

In *Burks* v. *State*, 50 Tex. Cr. R., 47 (1906), 94 S. W., 1040, the Court found:

"It is in evidence that the first marriage was consummated by virtue of a marriage license and that the second was a common-law marriage."

They went on to hold that the repudiation of the marriage by the wife was immaterial and that he was guilty of bigamy. This case was cited as still being the law of Texas in *Hopson* v. *State*, 30 S. W. 2d, 311 (1930).

Although it is not the purpose of this memorandum to set out the case law as to what elements are necessary to enter into a valid common law marriage in Ohio, it is necessary to set out in brief the elements themselves and thus be able to compare the common law marriage with the ceremonial mar-riage.

(a) "Verba de praesenti" or it must appear that the woman was taken as a wife and the man was taken as a husband, *Car-michael* v. *State, supra*, and not a promise to marry in the future, *Duncan* v. *Duncan*, 10 Ohio St., 181.

(b) A holding out.

(c) Cohabitation.

Thus, in *Markly* v. *Hudson*, 143 Ohio St., 163, it was held that an agreement to marry in praesenti made by parties com-petent to contract, accompanied and followed by cohabitation, as husband and wife with the result that they are treated and reputed as husband and wife in the community in which they reside constitutes a common law marriage.

It is the condition that the parties be *competent to contract* which is questioned under our present set of facts. It being

the theory that one party being presently married is not competent to contract.

Yet, in *In re Zemmick, supra,* the Court said the only difference between statutory marriage under a license and a common law marriage is in the method of expressing consent.

It is agreed that for a valid contract of marriage, a man can have but one lawful wife living. *Kennely* v. *Cowle,* 4 N. P., 105, and that the parties must be free to marry. But this is true of a statutory marriage also, see *State* v. *Najjar,* 1 N. J. Sup., 208, 63 At. 2d, 807.

Another reason to give judicial recognition to this meretricious relationship, if it be such, is that should the parties continue to live together, this void relationship could grow into a valid marriage upon the divorce or death of the former spouse without a new agreement in praesenti, see *Jenkins* v. *Jenkins,* 30 Ohio App., 336, 164 N. E., 790.

It is agreed that the decree of divorce or nullity is not needed for the innocent spouse of the "marriage" which is void *ab initio* to enter into a valid marriage with a third person. See 18 R. C. L., 445, Marriage No. 75, and *Williams* v. *Williams,* 90 Ohio App., 369.

The only case which was found directly in point is *Whitney* v. *Whitney,* 134 P. 2d, 357 (1943). There the Court in part held:

"Plural marriages being prohibited by the constitution are void *ab initio* and such a marriage, whether ceremonial or common law, does not confer on either of the parties any of the rights or privileges of a valid marriage."

In this case, the wife sued the husband for divorce on ground of extreme cruelty and asked for alimony and relief with respect to their minor children. The husband answered denying the marriage and set out in detail his marriage to another and asserted that that marriage had not been dissolved. The wife amended her petition and incorporated therein allegations which stated that the husband had a former wife living at the time of the subsequent marriage. The wife was granted the divorce on that ground.

After setting out these facts, the Court went on to say:

"Considerable discussion is indulged by the parties as to whether, since it is admitted there was no ceremonial marriage,

there was a common-law marriage, and cases are cited from this and other jurisdictions setting out the elements essential to a common-law marriage.

"We think this is beside the point. Common law marriages are valid in Oklahoma . . . . Where the prescribed essentials are shown, a common law marriage is as valid as one based on a license and ceremony.

"But, if one of the parties to a so-called common law marriage has a living spouse of an undissolved marriage, the common law marriage attempted is as polygamous and plural and, therefore, as void, as a ceremonial marriage attempted under the same circumstances."

The Court then concluded that the divorce should be granted; but found that because of a constitutional provision peculiar to Oklahoma and not present in Arkansas, Colorado, Florida, Illinois, Mississippi, Ohio and Kansas, alimony could not be granted. There being consent as to the custody and support of the children, the Court did not disturb those provisions.

The decision in the *Whitney case* caused members of the Oklahoma Bar to decide that since alimony could not be obtained, a divorce decree under these circumstances was the same as that granted under an annulment; and they voted to repeal it as a ground for divorce, 14 Okla. State Bar Journal 1178 and in 1955 it was repealed. See 12 Okla. Statutes, 1271.

*A SERIES OF TWO OR MORE COMMON LAW MARRIAGES BETWEEN THREE OR MORE INDIVIDUALS.*

No case has been found which shows a conviction for bigamy under a series of common law marriages; but it is submitted that since convictions have been upheld under the other series of relationships, it probably would be under this one.

If this relationship is to be considered as being a ground for a prosecution for bigamy, then some sanction should be given to the relationship; and under Section 2105.18, Revised Code, the children should be recognized as being legitimate.

It is submitted that this combination of marriages is merely a different method of arriving at the same strained void relationship as is created under any or all of the previous combinations.

It is further submitted that the missing element in all of

these combinations of marriages is a lack of capacity to consent and that this element is equally missing in all four combinations. The Ohio Supreme Court has recognized the common law marriage in a series of cases starting with *Carmichael* v. *The State, supra*, and continuing to the present day.

The above argument is premised on the theory that there was an innocent party to these strange relationships and that the ceremonies performed were not merely used as a guise to hide an admittedly illicit relationship.

Ohio by statute has granted relief by way of divorce to persons who are not entitled to it in most jurisdictions. This Court recognizes this remedy; and in the interests of society and the peace of mind of the parties and in the interests legitimatizing innocent children, all these void marital relationships should be treated equally. The nullity of the marriage should be judicially determined and a decree of divorce granted.

## CONCLUSION

Even though a marriage be absolutely void in its inception if one party is innocent, it is best that the relationship be determined.

Why should the child born to the admittedly void marriage of mates who have gone through a series of ceremonial marriages or through the continuation of a common law marriage and then a ceremonial marriage be treated differently in the eyes of the law than a child born of a series of common law marriages or through the continuation of a ceremonial marriage and then a common law marriage?

The relationship should be recognized and dissolved and then the Court can grant alimony, custody and support.

Further, the case of *Eggleston* v. *Eggleston, supra*, provides that subparagraph (a) of Section 3105.01, Revised Code, is the exclusive remedy in cases involving that situation; and thus, for that ground only a divorce may be granted and an action in annulment does not lie. The Court, therefore, overrules the motion to strike the petition in divorce filed in Case No. 734,631.

The Court has examined the motions to advance and finds them well taken and orders both cases advanced to the head of the contested trial list for the 8th day of May, 1961.

The Court treats the motion to consolidate as a motion to try the cases consecutively and grants it as such.

The Court orders Case No. 734584 to be tried first; for if the Court were to grant an annulment, it could not grant a divorce. The only issue to be tried in Case No. 734584 will be whether or not the plaintiff in that case was under duress. This is because, as discussed above, divorce is the exclusive remedy in cases involving both a prior marriage and a fraudulent contract. If the Court in trying the issues in Case No. 734584 determines that the plaintiff husband was under duress at the time of contracting the marriage, then there is no lawful marriage contract; and this Court, under its equitable powers, would be required to annul same. In that instance, the Court could not, under the present interpretation of Ohio law grant alimony, but could make an order of custody and support of any minor children of the parties. If, on the other hand, the Court finds that the plaintiff in that case was not under duress, it shall not go forward and try the remaining grounds in that case, but shall proceed to Case No. 734631 wherein it shall try the action on the part of the wife for divorce on the ground of prior marriage and upon the ground of gross neglect of duty.

A journal entry in conformity with all of the above shall be drawn by the attorney for the wife. O. S. J.